**Leon C. REID, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–1113.

United States Court of Veterans Appeals.

Submitted Feb. 5, 1992.

Decided April 22, 1992.

As Amended April 28, 1992.

Leon C. Reid, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Adrienne Koerber, Washington, D.C., were on the pleadings for appellee.

Before FARLEY, MANKIN and STEINBERG, Associate Judges.

PER CURIAM:

Appellant, Leon C. Reid, seeks reversal of a June 22, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied service connection for disabilities of his left ankle and lower back. *Leon C. Reid*, BVA 90–20803 (June 22, 1990). The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a) ).

The Court previously denied appellee's motion for summary affirmance, but accepted his motion in lieu of a brief. Upon consideration of the record, appellant's informal brief, appellant's supplemental brief, and appellee's motion, we find that appellant failed to submit new and material evidence with respect to his reopened claim for his left ankle disability. We also find that the BVA's denial of service connection for appellant's back disorder is not clearly erroneous. Therefore, we will affirm the Board's decision.

## I.

Leon C. Reid served in the Navy from January 1943 until August 1945. He was injured in August 1943 while on duty in the Aleutians. A contemporaneous medical report stated that the injury occurred at a warehouse when Reid "[j]umped from receiving platform to truck well to clean same. Landed on small stone, lost balance and fell side ways [sic], and forward over left leg. Felt knee snap and severe pain. Unable to stand." R. at 10. X rays revealed a "[c]omminuted fracture upper posterior tibia with slight separation." *Ibid.* The military medical personnel applied a leg cast which was removed several weeks later. A later examination indicated that the fracture had not fully healed, and an orthopedic examination was suggested. Appellant was then sent to the United States mainland where he continued to receive treatment, including surgery, for his knee, which continued to cause him difficulty. In December 1943, his diagnosis was changed from "[f]racture, simple, left knee" to "[f]racture, simple, left tibia." R. at 32. In August 1944, a Navy medical board determined that Reid had "suffered a severe derangement of the left knee joint as a result of a simple fracture of the left tibia." R. at 20. Shortly thereafter, appellant was discharged to limited shore duty, and in 1945 a medical board recommended that he be given a medical discharge. It appears that appellant was at some point awarded service connection and a disability rating for his knee injury, although the record does not indicate when this occurred.

In 1946, appellant began complaining about pain in his left ankle; however, a private hospital X ray revealed no ankle fracture. R. at 77. Later that year, a Veterans' Administration (now the Department of Veterans Affairs) (VA) physician examined him and also failed to diagnose an ankle problem. R. at 82. In December 1948, Dr. Herrman, a private physician, examined appellant for complaints of pain and swelling in his left ankle as well as headaches, neck pain, and swelling in his left side, all of which the veteran apparently attributed to the 1943 accident. Dr. Herrman, however, found no objective evidence of left ankle pathology aside from slight AP (anteroposterior) instability. R. at 86.

In April 1953, appellant reported for a VA exam with complaints of a painful, swollen left ankle. The examiner noted appellant's past difficulties with his left ankle and concluded that Reid "might have an unstable ankle secondary to an old sprain." R. at 103. By May 1953, the condition of appellant's ankle had improved, and the VA physician concluded in retrospect that Reid "had a tenosynovitis [inflammation of a tendon sheath] of the peroneal tendons going posterior and inferior to the tip of the fibula." R. at 104. Citing the diagnosis of tenosynovitis, in June 1953 a VA rating board denied service

connection for appellant's left ankle disability. R. at 105.

In May 1984, appellant again underwent knee surgery. He was temporarily awarded a 100% disability rating on account of his knee condition, but in February 1985 his disability rating was reduced to 30%. Appellant applied for a total rating based on individual unemployability, and continued to pursue service connection for his left ankle disability. He was examined by Dr. Stiller, a VA physician, who found X-ray evidence of osteochondromatosis (benign tumorous tissue containing bone and cartilage) of the left ankle. R. at 141. A March 1986 rating decision noted that the veteran's non-service-connected disabilities precluded a finding of unemployability. R. at 156. Appellant was again hospitalized in October 1985, resulting in a temporary 100% disability rating, which was reduced to 60% in January 1987. In January 1987, a rating decision continued denial of service connection for his left ankle condition.

In August 1987, a large osteochondral fragment was removed from the veteran's left ankle. The report of the operation, apparently written by Dr. Krebsbach, stated that appellant "suffered an injury to his left ankle while he was in the service many years ago and he had a fracture of the ankle which was never treated." R. at 188. The report also referred to an "old, partially healed defect." R. at 189. In October 1987, a rating decision confirmed and continued the 60% rating for appellant's knee disability.

In May 1988, a VA examiner noted that X rays of appellant's spine revealed "evidence of bony overgrowth prob 2° healed fx chronic LBP." R. at 226. Progress notes recorded in July and August 1988 indicate that VA physicians who treated the veteran for his back pain offered diagnoses of left lumbar plexopathy and multilevel radiculopathy, maladies which they apparently did not attribute to the 1943 accident. In August 1988, the BVA again denied appellant service connection for his left ankle disability, and also denied a total rating based on individual unemployability. Subsequently, the veteran asserted that his back had been broken in the same incident in which he injured his leg, and that the back injury had resulted in nerve damage affecting his legs. R. at 205, 208. He reopened his left ankle disability claim, and also claimed service connection for a back condition. The VA denied both claims in November 1988.

Appellant then submitted a VA Form 1-9 that presented a new description of the 1943 events in which he attributed his injuries to a bomb explosion. For the first time, he asserted that the military physicians had wanted to amputate his leg; that he had been put in a body cast; and that at the time his knee was broken, he also suffered a shattered ankle and a broken back. R. at 222-23. At a personal hearing at the St. Petersburg, Florida, Regional Office on May 23, 1989, he did not mention a bomb explosion, but testified under oath that his back had been broken when he was struck in the back by a lumber boom. R. at 238. The hearing officer denied his claims in June 1989. At a May 1990 BVA hearing, the veteran testified, again under oath, that he didn't know how his injury had happened, because he had been unconscious for four and a half days following the accident. R. at 282-83. The BVA denied his claims in August 1990, and a timely appeal to this Court followed.

II.

■ To reopen a claim that has been disallowed, a veteran must present or secure new and material evidence. 38 U.S.C. § 5108 (formerly § 3008). The BVA denied service connection for appellant's left ankle disability in August 1988. Appellant's reopened claim for a left ankle disorder and his original claim for a low back condition were both denied by the VA in November 1988. The veteran promptly appealed those denials. After a personal hearing, a hearing officer again denied both claims in June 1989. R. at 280. Under 38 C.F.R. § 3.156(b) (1991), evidence submitted prior to expiration of the appeal period, or prior to the BVA's decision on the claim where a timely appeal has been filed, is considered as having been filed in connection with the

claim for which the appeal is pending. Hence, evidence concerning appellant's reopened claim for a left ankle disability may be considered new if it was submitted after the August 1988 BVA decision.

The August 1987 operation report arguably might support a finding that appellant's present left ankle condition is related to his 1943 accident. The record indicates, however, that this evidence was before the BVA at the time of its decision in August 1988. Apparently, the only newly submitted evidence that is material to the issue of service connection for appellant's left ankle disability is the veteran's 1989 testimony that his ankle was injured in the 1943 incident. This evidence is not new because the veteran made this assertion as early as 1953. R. at 105. Consequently, we find that appellant did not submit new and material evidence with respect to his reopened claim for a left ankle disability. The BVA's denial of service connection for the ankle condition is therefore affirmed.

 We now turn to appellant's original claim for service connection for his lower back disorder. A determination regarding when and how a disorder was incurred or aggravated is a finding of fact subject to review under the "clearly erroneous" standard; the Court may not reject the BVA's conclusion if it is supported by a plausible basis in the record. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Appellant submitted evidence concerning treatment received since 1988 for his back pain. Although these records note a variety of possible disorders, they do not, with one possible exception, indicate that those disorders are related either to appellant's wartime service or to his service-connected knee disability. That exception is the May 1988 progress note describing "evidence of bony overgrowth prob 2° healed fx chronic LBP." R. at 226. On its face, this statement does not establish a relationship between the noted defect and the veteran's 1943 fall; it merely indicates that appellant's injury is old enough to permit healing and overgrowth. Further, to the extent that this evidence might be construed as supporting his claim, such support is balanced by evidence that the VA physicians who treated him in the summer of 1988 attributed his back symptomatology to causes other than his 1943 fall. Finally, as the Board noted, the veteran's service medical records did not mention any symptoms of a low back injury or disorder. Consequently, we find that there is a plausible basis in the record for the BVA's findings that appellant's lower back disorder "was not incurred in or aggravated by the veteran's wartime service," and "is not proximately due to or the result of the veteran's service-connected left knee disorder." *Reid*, BVA 90–20803, at 6. The Board's decision with respect to appellant's lower back claim is not clearly erroneous, and is therefore affirmed.

### III.

We find that appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision satisfies the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1) ), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b) (formerly § 3007(b) ). *See Gilbert*, 1 Vet.App. at 53.

The BVA decision appealed from is AFFIRMED.