Citation Nr: 1438754 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 08-26 047A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Whether new and material evidence was received to reopen a claim of entitlement to service connection for the cause of the Veteran's death. 

2. Entitlement to an initial rating for posttraumatic stress disorder (PTSD) in excess of 50 percent prior to December 30, 1991, in excess of 50 percent from March 1, 1992, to September 24, 1992, and in excess of 70 percent from April 1, 1993, to November 7, 1994, for accrued benefits purposes.


REPRESENTATION

Appellant represented by: Disabled American Veterans



WITNESS AT HEARINGS ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Megan C. Kral, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1968 to November 1969. The Veteran died in August 2001, and the appellant is the Veteran's surviving spouse.

The matter of accrued benefits comes before the Board of Veterans' Appeals (Board) on appeal from a September 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi. The matter seeking to reopen a claim of service connection for cause of death comes before the Board on appeal from a May 2010 rating decision of the Milwaukee, Wisconsin RO. Jurisdiction of the record was subsequently transferred to the St. Louis, Missouri RO.

The appellant has twice testified at hearings in support of her claims, initially in March 2010 and more recently in March 2014 before two of the undersigned Veterans Law Judges (VLJs) of the Board. Transcripts of the hearings are of record. A VLJ who conducts a hearing must participate in making the final determination of the claim involved. 38 U.S.C.A. § 7107(c) (West 2002); 38 C.F.R. § 20.707. By law, appeals may be assigned only to an individual VLJ or to a panel of not less than three members. See 38 U.S.C.A. § 7102(a) (West 2002). Thus, when an appellant has had a hearing before two separate VLJs covering one or more of the same claims on appeal, a third VLJ is assigned to participate in a panel decision with respect to those claims. Accordingly, a third VLJ has been assigned to participate in a panel decision in this case. The Veteran was offered the opportunity to testify at another hearing before a third VLJ in accordance with Arneson v. Shinseki, 24 Vet. App. 379 (2011), which held that, under 38 C.F.R. § 20.707, an appellant has the right to a hearing before all three VLJs involved in the panel decision. At the March 2014 hearing, however, the Veteran waived her right to an additional hearing before a third VLJ with respect to these claims being adjudicated in this decision. Accordingly, the Board is proceeding with its appellate review of these claims.


FINDINGS OF FACT

1. The Veteran died in August 2001; the amended death certificate lists the immediate cause of death as massive head injuries due to his being hit in the head with a blunt object. The Veteran's death was characterized as a homicide. The amended death certificate also specifies that the deceased had a past history with posttraumatic stress disorder, and identified such as a significant condition contributing to death. 

2. At the time of his death, service connection had been established for PTSD, (rated 100 percent effective December 14, 1991), and status post incision and drainage of a shell fragment wound of the proximal right forearm with two surgical scars (rated 0 percent). 

3. A May 2007 Board decision denied the appellant's claim of service connation for cause of the Veteran's death based essentially on a finding that the Veteran's service-connected disabilities did not substantially or materially contribute to cause his death, did not combine to cause his death, and did not aid or lend assistance in to the production of death. 

4. Evidence received since the May 2007 Board decision is not new; does not tend to show the Veteran's service-connected PTSD contributed to his death; does not relate to the unestablished fact necessary to substantiate a claim to establish service connection for cause of death; and does not raise a reasonable possibility of substantiating such claim. 

5. For the entire period on appeal, the Veteran received consistent in-patient psychiatric care for severe symptoms of PTSD, had a number of suicide attempts, family conflict, and experienced hallucinations such that he was virtually isolated from the community and demonstrably unable to obtain or retain employment. 


CONCLUSIONS OF LAW

1. New and material evidence has not been received, and the claim of service connection for the cause of the Veteran's death may not be reopened. 38 U.S.C.A. §§ 5108, 7104 (West 2002); 38 C.F.R. § 3.156 (2013).

2. For the entire period on appeal, the criteria for a 100 percent disability rating for service-connected PTSD have been met for accrued benefits purposes. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. § 4.132, Diagnostic Code (Code) 9411 (1996)


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claims. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

With respect to the claim for accrued benefits, inasmuch as the benefit sought is being granted, there is no reason to belabor the impact of the VCAA on the matter; any notice defect or duty to assist failure is harmless.

In Kent v. Nicholson, 20 Vet. App. 1 (2006), the United States Court of Appeals for Veterans Claims (Court) held that in a claim to reopen a previously finally denied claim, VCAA notice must notify the claimant of the meaning of new and material evidence and of what evidence and information (1) is necessary to reopen the claim; (2) is necessary to substantiate each element of the underlying service connection claim; and (3) is specifically required to substantiate the element or elements needed for service connection that were found insufficient in the prior final denial on the merits.

The appellant was advised of VA's duties to notify and assist in the development of the cause of death claim prior to the initial adjudication of her claim. An April 2012 letter provided notice in accordance with Kent, and also explained the evidence VA was responsible for providing and the evidence she was responsible for providing. This letter also informed the appellant of disability rating and effective date criteria. The appellant has had ample opportunity to respond/supplement the record and she has not alleged that notice in this case was less than adequate.

As noted above, two hearings were held in this matter. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during each of the hearings, the presiding VLJ specifically explained the issues and sought to determine whether any evidence that may have been overlooked. As such, the Board finds that there has been compliance with 38 C.F.R.§ 3.103(c)(2), in accordance with Bryant. It is not alleged that notice has been less than adequate.

The Veteran's pertinent service treatment records (STRs) and post-service treatment records have been secured. The appellant has provided a number of statements, as well as correspondence from the sheriff's department. Significantly, the appellant has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. VA's duty to assist is met. 

Legal Criteria, Factual Background, and Analysis

Initially, the Board notes that it has reviewed all of the evidence in the appellant's record with an emphasis on the evidence relevant to these appeals. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims.

 New and Material Evidence 

Generally, when a claim is disallowed, it may not be reopened and allowed, and a claim based on the same factual basis may not be considered. 38 U.S.C.A. §§ 7104, 7105. However, a claim on which there is a final decision may be reopened if new and material evidence is submitted. 38 U.S.C.A. § 5108.

"New" evidence means existing evidence not previously submitted to agency decision-makers. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). When determining whether the claim should be reopened, the credibility of the newly submitted evidence is to be presumed. Fortuck v. Principi, 17 Vet. App. 173, 179-80 (2003).

The Court has held that the requirement of new and material evidence raising a reasonable possibility of substantiating the claim is a low threshold. Specifically, the Court interpreted the language of 38 C.F.R. § 3.156(a) as creating a low threshold, and viewed the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." See Shade v. Shinseki, 24 Vet. App. 110 (2010). 

To establish service connection for the cause of the Veteran's death, the evidence must show that a disability incurred in or aggravated by active service was the principal or contributory cause of death. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312(a). In order to constitute the principal cause of death, the service-connected disability must be one of the immediate or underlying causes of death, or be etiologically related to the cause of death. 38 C.F.R. § 3.312(b). It is not sufficient to show that a service-connected disability casually shared in producing death; rather, it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1).

The appellant initially filed a claim of service connection for cause of the Veteran's death in September 2001. A May 2007 Board decision denied the claim based on a finding that that the Veteran's service-connected disabilities did not substantially or materially contribute to cause his death, did not combine to cause his death, and did not aid or lend assistance in to the production of his death. The appellant filed a Notice of Appeal with the Court; however, in December 2007 the Court dismissed the appeal as untimely. The May 2007 Board decision therefore is final. 38 U.S.C.A. § 7104.

The pertinent evidence at the time of the May 2007 denial included the Veteran's STRs; post-service treatment records (showing ongoing psychiatric treatment), the original August 2001 death certificate that identified the immediate cause of death as massive head injuries due to blunt trauma; the amended January 2006 death certificate which added a past history with posttraumatic stress disorder as a significant condition contributing to death; the autopsy report; transcripts from December 2002 and August 2004 hearings in which the appellant asserts that the Veteran's PTSD contributed to his death; letters from the Sheriff's department dated in April 2002 and December 2002; numerous statements of the appellant; and December 2002 statements of the appellant's sons. 

Evidence received since the May 2007 denial includes a March 2010 letter from the Sheriff's department which noted that at the time of death, the Veteran "had wounds on his hands and arms where in turn the victim possibly tried to defend himself from the attack"; and the transcript of the March 2014 hearing in which the appellant testified that the severity of the Veteran's PTSD contributed to his death. Specifically, the appellant argued that due to his PTSD, the Veteran would have had an altered fight or flight response. 

While the March 2010 letter from the Sheriff's department and the March 2014 testimony are new evidence, as they were not previously of record, the arguments advanced by this evidence are not new. Specifically, the appellant offers the March 2010 letter and her own testimony as support for the allegation that the Veteran's PTSD prevented him from defending himself from his attackers, or caused him to have an improper thought process which prevented him from exercising proper judgment on the night of his death. These arguments have already been addressed. Specifically, in the May 2007 decision, the Board considered the Veteran's PTSD, and in particular whether his inability to defend himself, recognize dangers, or prevent other people from taking advantage of him, led to the circumstances surrounding his death. It was concluded that these symptoms were not the proximate or a contributory cause of death. 

Further, to the extent the appellant offers the March 2010 letter as support for the allegation that the Veteran's PTSD prevented him from defending himself from his attackers, the March 2010 letter seems to suggest the opposite-that the Veteran had wounds that were consistent with him trying to defend himself from the attack. Therefore, the Board finds the appellant's testimony and the March 2010 letter redundant and cumulative of the arguments previously advanced. The Board notes that testimony simply reemphasizing the position previously considered in the prior final decision is not new or sufficient to reopen the claim. Reid v. Derwinski, 2 Vet. App. 312 (1992). 

The new evidence is not material, as it does not even suggest that the Veteran's cause of death was related to service, to include his service-connected PTSD. The March 2010 statement notes that "it appears the victim may have been sleeping in the car in his yard [when he was assaulted and killed]."

In light of the foregoing, the Board finds that new and material evidence has not been received, and that the claim of service for the cause of the Veteran's death may not be reopened. 

 Increased Ratings for PTSD for Accrued Benefits Purposes

At the time of his death, the Veteran had a pending claim for increased ratings for his PTSD. Although his claim terminated with his death, the regulations set forth a procedure for a qualified survivor to carry on, to a limited extent, a deceased veteran's claim for VA benefits by submitting a timely claim for accrued benefits. 38 U.S.C.A. § 5121 (West 2002); see Landicho v. Brown, 7 Vet. App. 42, 47 (1994). Thus, while the claim for accrued benefits is separate from the increased rating claim filed by the Veteran prior to his death, the accrued benefits claim is derivative of the Veteran's claim, and the appellant takes the Veteran's claim as they stood on the date of his death. See Zevalkink v. Brown, 102 F. 3d 1236, 1242 (Fed. Cir. 1996); Jones v. West, 146 F. 3d 1296 (Fed. Cir. 1998). Here, the appellant, is advancing essentially the same claim for increased ratings for PTSD as the Veteran's claim, which was pending at the time of his death. 

The law applicable to accrued benefits provides that certain individuals may be paid periodic monetary benefits, due and unpaid for a period not to exceed two years (for deaths before December 16, 2003), to which the Veteran was entitled at the time of his death under existing ratings or based on evidence in the file at the time of the Veteran's death. 38 U.S.C.A. § 5121(a); 38 C.F.R. § 3.1000; Pub. L. No. 108-183, § 104 (2005). Also, under 38 U.S.C.A. § 5121(c), a claim for accrued benefits must be filed within one year after the date of death. 38 U.S.C.A. § 5121(c). In this case, the Veteran died in August 2001, and the appellant filed her claim in September 2001. Thus, a timely claim for accrued benefits has been submitted.

By statute, entitlement to accrued benefits must be based on evidence in the file at the time of death, or evidence, such as VA records, deemed to be of record at that time. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000; Zevalkink v. Brown, 6 Vet. App. 483 (1994).

Disability evaluations are determined by the application of the Schedule For Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). However, staged ratings are also appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, the Veteran was assigned a 50 percent rating from December 14, 1991 to December 29, 1991; a 100 percent temporary total rating from December 30, 1991 to March 1, 1992; a 50 percent rating from March 1, 1992 to September 24, 1992; a 100 percent temporary total rating from September 25, 1992 to April 1, 1993; a 70 percent rating from April 1, 1993 to November 7, 1994; and a 100 percent rating from November 8, 1994. The appellant asserts that the Veteran should have been rated 100 percent disabled for his PTSD from the initial grant of service connection (December 1991). 

At the time of his claim and for the appeal periods in question, 38 C.F.R. § 4.132 applied to psychiatric disabilities. [The Board notes that the criteria for rating psychiatric disabilities were revised, effective November 7, 1996, and thus, are not applicable to the present appeal.] Prior to November 7, 1996, VA regulations provided that the severity of a psychiatric disorder was premised upon actual symptomatology, as it affected social and industrial adaptability. 38 C.F.R. § 4.130, 4.132 (1996). Two of the most important determinants were time lost from gainful employment and decrease in work efficiency. 38 C.F.R. § 4.130 (1996).

Prior to November 7, 1996, Code 9411 provided that a 50 percent rating required that the ability to establish or maintain effective or favorable relationships with people be considerably impaired, and that, by reason of psychoneurotic symptoms, the reliability, flexibility and efficiency levels be so reduced as to result in considerable industrial impairment. A 70 percent rating required that the ability to establish and maintain effective or favorable relationships with people be severely impaired, and that the psychoneurotic symptoms be of such severity and persistence that there was severe impairment in the ability to obtain or retain employment. A 100 percent rating required that the attitudes of all contacts except the most intimate were so adversely affected as to result in virtual isolation in the community; psychoneurotic symptomatology bordering on gross repudiation of reality; or demonstrable inability to obtain or retain employment. 38 C.F.R. § 4.132, Code 9411 (1996); see also Johnson v. Brown, 7 Vet. App. 95 (1994) (holding that the criteria in 38 C.F.R. § 4.132 for a 100 percent rating are each independent bases for granting a 100 percent rating).

For the period from December 14, 1991 and December 29, 1991, there is very little evidence in the record regarding his psychiatric symptoms. However, the minimal treatment records do show severe symptoms, including visual and auditory hallucinations; panic attacks; anxious and depressed mood; argumentative behavior which led to physical altercations; and alcohol abuse. Particularly, the Board notes that the Veteran was hospitalized both immediately before and after this period of the appeal. While much of the Veteran's inpatient treatment records address his diagnosed alcohol abuse, the medical evidence does not provide a way to separate the symptoms of alcohol abuse from those associated with his service-connected PTSD. 

Social Security Administration (SSA) records reflect the Veteran became too disabled to work in December 1991 due to major depression and anxiety. 

For the period from March 1, 1992 to September 24, 1992, treatment records show the Veteran was very troubled and in need of additional counseling. Symptoms exhibited included rage, depression and nerves. The Veteran was hospitalized from March 6 to March 13, 1992. At admission, it was noted that he had an altercation with his son and his younger children were taken away from his custody. A social work screening confirmed an escalation of problems, including conflict with his children. On April 1992 VA examination, the Veteran reported homicidal thoughts, without action; past suicide attempts; anxiety in crowds and with loud noises; and auditory hallucinations. An April 1992 treatment record showed a Global Assessment Functioning (GAF) score of 43, indicating serious impairment. The Board notes that a score of 41 to 50 is assigned where there are "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV) 47 (4th ed. 1994). Additional symptoms exhibited during this period of the appeal include recurring nightmares, intrusive thoughts, chronic sleep disturbances, decreased energy, and increased alcohol use. In July 1992, it was reported that the Veteran felt isolated from his family, because even though he attended church with his family, he lived alone and there were problems between him and his sons. It was recommended that the Veteran attend alcohol treatment and marriage counseling. 

Finally, for the period from April 1, 1993 to November 7, 1994, on June 1993 VA examination, the Veteran reported nervousness; auditory hallucinations; homicidal thoughts, without action; insomnia and nightmares; increased startle response to loud noises; and anxiety in large crowds. Medical records show the Veteran was hospitalized in June 1994 to July 1994 and September 1994 to October 1994 for acute exacerbation of signs and symptoms of PTSD. Symptoms during this period of the appeal included sleeplessness, nightmares, weekly flashbacks, increased anxiety, and generalized ineffective coping outside the hospital related to his PTSD symptoms. 

Based on the evidence of record, and resolving all reasonable doubt in the Veteran's favor, the Board finds that at all times during the periods on appeal, the Veteran's PTSD symptoms virtually isolated him from the community, including requiring numerous hospitalizations and causing personal conflicts; and effectively rendered him unable to obtain or retain employment. As such, the Board finds the Veteran's PTSD symptoms meet the criteria for a 100 percent rating during all periods on appeal. 38 C.F.R. § 4.132, Code 9411 (1996). 

Accrued benefits should be awarded based on these ratings and in accordance with the law. 38 C.F.R. § 3.1000. 


ORDER

The appeal to reopen a claim of entitlement to service connection for the cause of the Veteran's death is denied.

Accrued benefits under 38 U.S.C.A. § 5121, based on an increased rating to 100 percent for the Veteran's service-connected PTSD for the periods on appeal (from December 14, 1991 to December 29, 1991; from March 1, 1992 to September 24, 1992; and from April 1, 1993 to November 7, 1994) is granted, subject to the laws and regulations governing the payment of monetary benefits. 



 
 JAMES L. MARCH ROBERT E. SULLIVAN 
 Veterans Law Judge Veterans Law Judge
 Board of Veterans' Appeals Board of Veterans' Appeals



 __________________________________________
M. C. GRAHAM
 Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs