# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-345

JOSEPH A. FORTUCK, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      June 27, 2003      )

*Ronald L. Smith*, of Washington, D.C., was on the briefs for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *William L. Puchnick*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, through counsel, seeks review of a November 17, 2000, decision of the Board of Veterans' Appeals (BVA or Board) that concluded that new and material evidence had not been presented to reopen his previously and finally disallowed claim for Department of Veterans Affairs (VA) service connection for an acquired psychiatric disorder. Record (R.) at 1-8. The appellant and the Secretary each filed briefs, and the appellant filed a reply brief.

In a March 28, 2002, single-judge memorandum decision, the Court affirmed the November 2000 BVA decision. *Fortuck v. Principi*, No. 01-345, 2002 WL 553436, at *4 (Vet. App. Mar. 28, 2002). In that March 2002 decision, the Court granted the appellant's express waiver of consideration of the effect on his appeal of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (2000) (VCAA). *Fortuck*, 2002 WL 553436, at *2. The Court also determined that the appellant's mother's April 1979 statement to the Probate Court of the County of

Wayne, Michigan [hereinafter Probate Court], regarding the appellant's mental stability was not new and material evidence that the appellant had exhibited schizophrenia during service or within the one-year presumption period under 38 C.F.R. § 3.307(c) (2001) because (1) in April 1998, a VA examiner had indicated, without identifying the April 1979 statement "as indicia of schizophrenia", that the appellant's schizophrenia was first documented in 1983 (*see* R. at 645) and (2) "it was plausible for the Board to conclude that the period from 1979 to 1983 was an unreasonable time lapse." *Fortuck*, 2002 WL 553436, at *3. The Court further concluded that "lay assertions of medical causation will not suffice initially to reopen a claim under 38 U.S.C. § 5108." *Ibid* (citing *Moray v. Brown*, 5 Vet.App. 211, 214 (1993)).

On May 2, 2002, the appellant filed a timely motion for a panel decision. On October 15, 2002, Judge Farley was designated a member of the panel to replace Judge Holdaway, who had retired. In a March 13, 2003, order, the Court granted the appellant's motion for a panel decision and ordered the Secretary to respond to that motion within 30 days. *Fortuck v. Principi*, No. 01-345, 2003 WL 1192911 (Vet. App. Mar. 13, 2003) (per curiam order). The Secretary filed a response on April 14, 2003.

The Court will withdraw the March 28, 2002, single-judge memorandum decision and issue this opinion in its stead. For the reasons that follow, the Court will vacate the November 2000 Board decision and remand the matter for readjudication.

## I. Relevant Background

The veteran served on active duty in the U.S. Army from June 1977 to March 1979. R. at 11. His service entrance examination report did not indicate any abnormal psychiatric or neurological condition, and it appears that he signed a statement in the examination report that stated: "I am in [g]ood [h]ealth." R. at 16-17. In a November 1978 Army examination report, the examiner noted that the veteran had occasional depression. R. at 45. The veteran's February 1979 separation examination report did not note any neurological abnormalities, but under the "Psychiatric" category both the "normal" and "abnormal" boxes were checked. R. at 48. In April 1979, the veteran's mother filed a petition with the Probate Court for his judicial commitment and treatment due to mental illness. R. at 127-28. (The Court notes that this document was received

by VA in February 1992, *see* R. at 125.)  That same month, the Probate Court issued an order of examination and transport whereby the veteran was taken into protective custody and transported immediately to a hospital for a psychiatric examination; a report of that examination does not appear to be part of the record on appeal (ROA).  R. at 129-30; *see* R. at 1-754.

In August 1983, after criminal charges were filed against the veteran for assault with intent to murder and possession of a firearm in the commission of a felony, a Michigan state district court judge signed an incompetent-to-stand-trial order that committed the veteran for 15 months to an institution for psychiatric care; the veteran was then admitted to the Center for Forensic Psychiatry (CFP).  R. at 66-70, 74, 362-65, 377.  Later that month, a CFP psychiatric examiner reported that he was "not thoroughly convinced" that the veteran had "a major mental illness[,] and hence treatment with medication will not be initiated"; the examiner ruled out the possible diagnoses of a passive-aggressive personality disorder with a history of substance abuse, a factitious disorder with psychological symptoms, and an atypical paranoid disorder.  R. at 70.  The chief clinician at the hospital that same month diagnosed the veteran as having "[p]assive-[a]ggressive [p]ersonality [d]isorder, [a]ntisocial [p]ersonality [d]isorder" and "rule out [a]typical [d]epression".  R. at 387.  The veteran was civilly committed by the Probate Court in October 1984 to the CFP where he remained for approximately three years (R. at 438, 460); in November 1984, Dr. Phelps diagnosed "[s]chizophrenia, [p]aranoid [t]ype, [c]hronic" and concluded that the veteran was "mentally ill" (R. at 75).  In January 1985, the veteran's mother again submitted a petition to the Probate Court asking the court to find that the veteran was "legally incapacitated".  R. at 430-33.  In a February 1985 physician's certificate prepared for the Probate Court, Dr. Yaroch, a psychiatrist, indicated that the veteran had "[s]chizophrenia, paranoid type", as well as "[m]ajor depressive episode".  R. at 426.  In a March 1985 order, the Probate Court determined that the veteran should continue hospital treatment indefinitely because of his mental condition.  R. at 536-37.  In August 1987, the veteran was transferred to the Northville Regional Psychiatric Hospital (NRPH); he was discharged in April 1988 and placed in a group home before making a transition to living independently.  R. at 104.

In June 1988, the veteran submitted to a VA regional office (RO) an application for compensation or pension (C&P) for, inter alia, a December 1978 head injury and paranoid

schizophrenia. R. at 55-58. The veteran in August 1988 sent a letter to the VARO stating that his paranoid schizophrenia had been "ag[g]ravated" by his military service. R. at 78. In August 1988, the RO denied his claim for service connection for an acquired psychiatric disorder. R. at 80. The RO noted, in a November 1988 decision denying the same claim, that the veteran's service records were "entirely silent for any indications of treatment or complaints of any psychiatric disabilities." R. at 91-92. In a Statement of the Case (SOC) issued that same month, the RO indicated that the "first evidence of a psychosis [was in] the November 1984 evaluation, more than one year following [the veteran's] discharge from military service." R. at 95-98.

In September 1989, the veteran was readmitted to NRPH for approximately one month, diagnosed as having "[s]chizophrenia, paranoid", and then transferred to a VA medical center for another month. R. at 100, 104-06, 154, 189. In October 1989, the veteran submitted to the RO a second VA C&P application and claimed that he had incurred during service traumatic organic brain syndrome with psychosis. R. at 108-11. In November 1990, he was discharged after approximately three months from the Detroit Psychiatric Institute; in the final psychiatric examination report for that hospitalization, he was diagnosed as having "[s]chizophrenia, [p]aranoid [t]ype". R. at 202. A March 1991 RO decision confirmed the November 1988 RO decision and determined that new and material evidence had not been presented to reopen the veteran's service-connection claim. R. at 118. In a February 1992 Supplemental SOC (SSOC) sent to the veteran in October 1992, the RO noted that medical records submitted by the veteran between January and September 1992, including an April 1979 application for hospitalization and a court order "requesting hospitalization", demonstrated neither "evidence of a diagnosed acquired psychiatric disorder related to military service nor [evidence of such a diagnosis] prior to the 1984 reports previously considered." R. at 198-99; *see also* R. at 74-75, 659-69.

In December 1994, the RO concluded that new and material evidence had not been presented to reopen the veteran's claim for a mental disorder. R. at 223. The veteran appealed to the Board, which, in April 1997, remanded the claim for further development, to include obtaining private medical records and affording the veteran a VA psychiatric examination. R. at 249-51. In August 1997, the RO received an August 1983 competency examination report from the Detroit, Michigan, Recorder's Court Psychiatric Clinic where the veteran was diagnosed as having

4

"[s]chizophrenia, paranoid type . . . with a secondary diagnosis of [a]lcoholism, continuous". R. at 356, 359, 369. In an April 1998 VA C&P mental-disorders examination report, the examining physician diagnosed the veteran as having "[s]chizophrenia, paranoid type" with a history of alcohol abuse and noted:

> Based on the interview with [the veteran] and an extensive [r]eview of his chart, there is no evidence to support the fact [sic] that his [c]urrent psychiatric disorder, schizophrenia, had its onset in the service. [S]upporting documents in his records all seem to indicate that symptoms [b]egin approximately in 1983, about four years after the patient left [a]ctive duty.

R. at 646. In a February 2000 SSOC, the RO, after reviewing various medical examination reports and the April 1998 VA examination report, indicated that new and material evidence had not been presented to reopen the veteran's claim. R. at 700. In May 2000, the RO received this statement from the veteran's mother: "All I can say is [that the veteran] was so different after he was in the Army and he did get worse and worse over the almost 2 years [that] he stayed at our home until I told him he had to leave because I was afraid of him and afraid for my younger child." R. at 734.

In the November 17, 2000, BVA decision here on appeal, the Board determined that the veteran had not appealed the August 1988 RO decision and that "[t]he evidence associated with the claims folder since [that] decision . . . is not so significant that it must be considered in order to fairly decide the merits of the veteran's claim." R. at 2. After reviewing the evidence of record at the time of the August 1988 RO decision and the medical evidence subsequently submitted pursuant to the April 1997 Board remand, including the April 1998 VA psychiatric examination report, the Board determined that the evidence submitted by the veteran was "essentially cumulative of what was known at the time of the original August 1988 [RO] decision" in which "the central rationale behind the denial [of service connection for an acquired psychiatric disorder] was that [his paranoid schizophrenia] was not noted during service or within any one[-]year presumpti[on] period" and thus concluded that new and material evidence had not been presented to reopen his claim. R. at 3-6.

## II. Contentions on Appeal

In his brief, the appellant asserts that the November 2000 BVA decision should be reversed because the Board committed legal error by (1) requiring him "to show a diagnosis of schizophrenia within one year from his discharge from service rather than compensable characteristic manifestations within that one year followed by a definite diagnosis within a reasonable period of time" under 38 C.F.R. § 3.307 (2000); and (2) rejecting as lay evidence his mother's April 1979 petition to the Probate Court and her later statements during the claims process. Brief (Br.) at 15-21.

The Secretary argues in his brief that there is a plausible basis in the record for the Board's determination that new and material evidence had not been presented to reopen the appellant's service-connection claim. Br. at 3-4. The Secretary further contends that the appellant's claim to reopen should be remanded in light of the VCAA; *Holliday v. Principi*, 14 Vet.App. 280 (2001), *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order); and *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). Br. at 4-6.

In his reply brief, the appellant states that he "affirmatively waives" consideration on appeal of any rights in accordance with the Secretary's duty to assist or duty to notify under the VCAA. Reply Br. at 3 (arguing that present case is distinguishable from *Mahl v. Principi*, 15 Vet.App. 37, 38-39 (2001) (per curiam order), where, although appellant sought VCAA remand and Court's consideration of other arguments, Court did not address other arguments as part of its remand order because "we will render our decisions on the narrowest possible grounds"). The appellant argues that a VCAA remand will result in piecemeal litigation. Reply Br. at 5. He also notes that both the RO and Board decisions do not discuss an "'unreasonable time lapse'" between his manifestations of schizophrenia and his diagnosis; rather, that determination, as set forth in the Court's March 2002 single-judge memorandum decision, constitutes an "improper de novo finding" that was based only on the Secretary's argument in his brief. Reply Br. at 6.

## III. Analysis

As an initial matter, the VCAA, inter alia, amended 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A ("Duty to assist claimants").

6

VCAA § 3(a), 114 Stat. at 2096-98. The Court subsequently issued its opinion in the *Holliday* case, wherein the Court concluded "that all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment." *Holliday*, 14 Vet.App. at 286. *But see Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002) (seemingly overruling in part, sub silentio, *Holliday*, *supra*, as to application generally of holding set forth above to pre-VCAA BVA decisions), *mot. for en banc consideration denied*, 2002 WL 1733754 (Fed. Cir. July 15, 2002); *cf. Juarez v. Principi*, 16 Vet.App. 518, 521 (2002) (remanding claim pursuant to *Holliday*, *supra*, "[b]ecause, as of the November 9, 2000, enactment of the VCAA, the 120-day judicial-appeal period had not yet expired and the appellant had not filed [a Notice of Appeal (NOA), and, therefore,] the claims denied by the September 2000 BVA decision were still pending before VA"). Pursuant to *Karnas*, "where the law or regulation changes after a claim has been filed or reopened but before the administrative . . . appeal process has been concluded, the version mo[re] favorable to [the] appellant should . . . apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so." *Karnas*, *supra*. In light of the disposition of this appeal, the Court need not address the waiver issue.

The Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured. *See* 38 U.S.C. §§ 5108, 7104(b), 7105(c); 38 C.F.R. § 3.156(a) (1999). In order to meet this requirement, the evidence "must be **both** new **and** material." *Smith (Russell) v. West*, 12 Vet.App. 312, 314 (1999); *see Winters v. West*, 12 Vet.App. 203, 206 (1999) (en banc), *vacated and remanded on other grounds sub nom. Winters v. Gober*, 219 F.3d 1375, 1380 (Fed. Cir. 2000) (expressing "no opinion" on three-step analysis applied to claims to reopen by this Court in *Winters*, *supra*) [hereinafter *Winters*]. "New evidence" is evidence "not previously submitted to agency decisionmakers [that is] . . . neither cumulative nor redundant." 38 C.F.R. § 3.156(a) (1999); *see also Elkins v. West*, 12 Vet.App. 209, 216 (1999); *Evans (Samuel) v. Brown*, 9 Vet.App. 273, 283 (1996). If the evidence was not in the record at the time of the final disallowance of the claim and is not cumulative of other evidence in the record, it is new. *See Smith (Russell)*, *supra*. If the evidence is not new, "the inquiry ends and the claim cannot be reopened." *Ibid.*; *see also Anglin v. West*, 203 F.3d 1343, 1347 (Fed. Cir. 2000) (affirming under 38 C.F.R. § 3.156(a) (1999) decision of this Court where, "[b]ecause the evidence presented . . . was not new,

[this Court] did not examine whether it was material"); *Vargas-Gonzalez v. West*, 12 Vet.App. 321, 327 (1999).

At the time of the November 2000 BVA decision, 38 C.F.R. § 3.156(a) provided:

> *New and material evidence* means evidence not previously submitted to agency decisionmakers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim.

38 C.F.R. § 3.156(a) (1999); *see also Hodge v. West*, 155 F.3d 1356, 1359 (Fed. Cir. 1998). VA regulatory § 3.307(c) then stated in pertinent part:

> No presumptions may be invoked on the basis of advancement of the disease when first definitely diagnosed for the purpose of showing its existence to a degree of 10 percent within the applicable period. This will not be interpreted as requiring that the disease be diagnosed in the presumpti[on] period, but only that there be then shown by acceptable medical or lay evidence characteristic manifestations of the disease to the required degree, followed without unreasonable time lapse by definite diagnosis. Symptomatology shown in the prescribed period may have no particular significance when first observed, but in light of subsequent developments it may gain considerable significance.

38 C.F.R. § 3.307(c) (1999).

Board determinations as to whether new and material evidence has been presented are generally reviewed under the "clearly erroneous" standard pursuant to 38 U.S.C. § 7261(a)(4), *see Elkins*, 12 Vet.App. at 217. When making determinations as to whether new and material evidence has been presented, both this Court and the Board must presume the credibility of the evidence and may not decline to reopen a claim for lack of new and material evidence merely because the proffered evidence is found to lack credibility. *See Kutscherousky v. West*, 12 Vet.App. 369, 371 (1999) (per curiam order) (concluding that Court's en banc opinions in *Elkins* and *Winters* regarding *Hodge*, all *supra*, "in no way suggested that the Court's long-standing holding that the credibility of the new evidence is presumed for purposes of determining whether new and material evidence has been presented . . . has been in any way altered by *Hodge*"); *Fluker v. Brown*, 5 Vet.App. 296, 298

8

(1993) (noting that "[f]or purposes of determining whether a claimant has submitted new and material evidence to reopen a claim, the Court presumes the credibility of the evidence"); *Justus v. Principi*, 3 Vet.App. 510, 512-13 (1992) (finding error because BVA – by appearing "skeptical" of statement – failed to presume credibility of statement prior to reopening stage; Court noted that its finding of error "in no way endorse[d] either the weight or credibility" of statement).

The Board is also required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

In the instant case, the appellant argues that the Board committed error when it found that his mother's April 1979 statement to the Probate Court was not new and material evidence showing that he had exhibited paranoid schizophrenia during service or within the one-year presumption period. Br. at 18-21. In the November 2000 BVA decision, the Board concluded that neither the appellant's mother's April 1979 statement nor her statements made during the course of the claim could "serve as a basis upon which to reopen this claim" because there was no indication that the appellant's mother was a medical professional. R. at 7. Under 38 C.F.R. § 3.307(c) (1999), "characteristic manifestations of the disease to the required degree" may be demonstrated "by acceptable medical *or lay evidence*" (emphasis added).

The Board failed to provide an adequate statement of reasons or bases for its determination that the appellant's mother's statements did not constitute new and material evidence to reopen the appellant's claim for service connection for an acquired psychiatric disorder. The Board stated:

> The only possible evidence that could be construed as new and material are the photocopied records from the probate court in the state of Michigan dated in April 1979. As noted above, the veteran's mother then stated that the veteran was threatening and accusing, and had threatened to jump in a river. However, no medical professional has identified these actions as part of the veteran's manifestations of paranoid schizophrenia. Indeed, the VA examiner stated in the April 1998 examination report that the earliest documented onset of schizophrenia was in 1983. That examiner stated that he reviewed the claims file, and he did not identify the 1979 petition to [the] probate court as indicia of schizophrenia. Only the veteran's mother has identified these actions as manifestations of paranoid schizophrenia, which would place the onset of the disease within one year following separation from active service. This could in turn lead to a presumption of service connection under 38 C.F.R. §§ 3.307 and 3.309. However, there is nothing in the claims file that would reflect that the veteran's mother is a medical professional, and thus, her statements, made either during the course of this claim or in 1979, cannot serve as a basis upon which to reopen this claim.

R. at 6-7. The Court finds this analysis inadequate and insufficient to provide for effective judicial review. As the appellant correctly contends, the Board failed to support its conclusion that medical evidence is necessary to reopen his claim. Br. at 20-21. Further, the Board failed to discuss (1) whether under 38 C.F.R. § 3.156(a) (1999) the appellant's mother's lay statements by themselves, presuming their credibility, as required by *Fluker* and *Justus*, both *supra*, "or in connection with evidence previously assembled[, are] so significant that [they] must be considered in order to fairly decide the merits of the claim" and (2) whether under 38 C.F.R. § 3.307(c) (1999) the statements constitute "acceptable medical or lay evidence". *See* R. at 1-8.

As to whether the time lapse between the appellant's manifestations as identified by his mother and his diagnosis was unreasonable, the Secretary argues that the instant case is similar to *Cook v. Brown*, 4 Vet.App. 231, 236-38 (1993). Br. at 10-11; Response (Resp.) at 2-4. In *Cook*, the Court reversed the BVA decision and remanded, inter alia, the appellant's ulcer claim after

10

concluding (1) that a 1990 uncontradicted physician statement as to the appellant's continual treatment during the approximately five-year period between the manifestations and the diagnosis of his ulcer established the "necessary strong evidentiary link between the manifested disease and the diagnosed disease" and (2) that the Board had erred when it had "*implicitly* determined that the interval between the 'characteristic manifestations' of an ulcer in October 1946 within the presumption period" and the "'definite diagnosis' of an ulcer in 1950" was "an 'unreasonable time lapse'". *Cook*, 4 Vet.App. at 236-38 (emphasis added).

The Secretary asserts that the Court should similarly find in the instant case that the Board had *implicitly* concluded in its November 2000 BVA decision that the four-year period between the appellant's mother's April 1979 lay statement to the Probate Court and his 1983 diagnosis was unreasonable. Resp. at 2-3. The appellant contends that such an implicit finding would constitute an "improper de novo finding" by this Court. Reply Br. at 6. The Court declines to find such an implicit determination in the BVA decision here. If the Court were to do so, it would in effect be making a determination in the first instance to *affirm* the Board's denial of service connection for an acquired psychiatric disorder, paranoid schizophrenia. Although the court in *Cook* reviewed the BVA decision as though the Board had made an implicit determination, and thus *reversed* that Board decision rather than ordering a remand based on an inadequate statement of reasons or bases under section 7104(d)(1), the Court did so in the context of finding that such a determination was "clearly erroneous" because it was not supported by a plausible basis in the record. *Cook*, 4 Vet.App. at 238; *see* 38 U.S.C. § 7104(d)(1). The instant case, however, differs from *Cook* in that an implicit finding here would involve the Court's making an initial finding of unreasonableness in order to affirm the Board's denial of service connection. The Board is better equipped than the Court to engage in the initial factfinding necessary to resolve this question of unreasonableness. *See McCormick v. Gober*, 14 Vet.App. 39, 44-45 (2000) (remanding to BVA for it to address initially "questions [raised for first time to this Court that] are peculiarly within the competence of VA to address").

Accordingly, the Court will vacate the BVA decision and remand this matter for readjudication. On remand, the Board must provide a thorough discussion so as to enable the appellant to understand the precise basis for the Board's decision and to facilitate review in this Court if sought again. *See Caluza*, *Gabrielson*, and *Gilbert*, all *supra*.

11

## IV. Conclusion

Upon consideration of the ROA, the parties' pleadings, and the foregoing analysis, the Court vacates the November 2000 Board decision and remands the matter for issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 7104(a), (d)(1); 38 U.S.C. §§ 5100-5103, 5103A, 5106, 5107, 5108; 66 Fed. Reg. 45,620 (Aug. 29, 2001) (amending, inter alia, § 3.159(b) and (c) as applicable); 38 C.F.R. §§ 3.156(a), 3.307 (1999); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion, and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994 (VBIA), Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that VBIA § 302 applies to all elements of a claim remanded by Court or Board), and with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. The VCAA and its implementing regulations will apply on remand, *see* 66 Fed. Reg. at 45,620 (amended provisions applicable to original claims "not decided by VA as of" November 9, 2000). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky*, 12 Vet.App. at 372-73 (concluding that appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence, as appropriate to claim in question, and argument or to request hearing on appeal, at which appellant may submit new evidence and argument), and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.