http://www.va.gov/vetapp16/Files5/1639924.txt

Citation Nr: 1639924 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 13-36 183 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for right tonsillar squamous cell carcinoma (oropharynx cancer).

2. Entitlement to service connection for the Veteran's variously diagnosed cancers, including right tonsillar squamous cell carcinoma (with metastases) and esophageal cancer.

3. Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance (A&A) of another person or at the housebound rate.

4. Entitlement to service connection for the cause of the Veteran's death.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

A. Barone, Counsel

INTRODUCTION

The Veteran served on active duty from May 1968 to May 1970. He died in October 2012. The appellant is his surviving spouse; she has been substituted by the Agency of Original Jurisdiction (AOJ) to complete the processing of the deceased Veteran's appeal with regard to the SMC issue as well as the issue of entitlement to service connection for cancer. The substitution was established in part of a December 2012 decisional letter sent to the appellant, documented in Virtual VA, granting the appellant substituted claimant status. As discussed in the Board's prior September 2015 remand of these issues, the Board observes that correspondence following the substitution determination from both VA and the appellant have occasionally referred to the claims as involving "accrued benefits" (an alternative basis of jurisdiction, different than substitution); however, there is no indication that the appellant has disagreed with or sought to appeal the December 2012 decision granting her substituted claimant status.

The appellant appealed to the Board of Veterans' Appeals (Board) from a December 2012 rating decision of the Department of Veterans Affairs (VA) Pension Management Center (PMC) in Milwaukee, Wisconsin after a temporary transfer of jurisdiction over the case from the VA Regional Office (RO) in Montgomery, Alabama. Jurisdiction of the case appears to have been subsequently permanently returned to the RO in Montgomery. The December 2012 rating decision denied service connection for the cause of the Veteran's death. In August 2015, the appellant testified at a videoconference hearing before the undersigned Veterans Law Judge of the Board. A transcript of the hearing is of record.

Prior to his death, the Veteran initiated an appeal of a March 2012 rating decision of the VA RO in Montgomery, Alabama. The Veteran's appeal arising from his March 2012 notice of disagreement was pending at the time of his death.

This matter was previously before the Board in September 2015, when the issues remaining on appeal were remanded for additional development of the evidence.

The Board notes that the AOJ has characterized the Veteran's (and now the appellant's) pending claim for service connection for a cancer diagnosis as a petition to reopen a prior final denial of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer). The Board notes that the contention behind this issue on appeal is that the Veteran's cancers, however diagnosed, were service-connected. As discussed below, further development is needed to clarify the details of the Veteran's various cancer diagnoses (including identifying the primary cancer diagnoses and the secondary metastatic manifestations of the primary diagnoses, amidst conflicting indications of record). The Board's September 2015 remand explained that the petition to reopen the claim for service connection for tonsillar carcinoma (oropharynx cancer) may further include claims for service connection for distinct cancer diagnoses other than the right tonsillar squamous cell carcinoma (oropharynx cancer) that was considered in the prior February 2004 final denial, to the extent any other primary cancer diagnoses are shown distinct from the right tonsillar squamous cell carcinoma (oropharynx cancer). Although further development remains needed, the development completed during the processing of the Board's September 2015 remand yielded a June 2016 VA medical opinion indicating that the Veteran had at least one additional pertinent primary cancer diagnosis: esophageal cancer. The Board's decision below reopens the claim of entitlement to service connection for the right tonsillar cancer, and now recharacterizes the issue to more clearly encompass the set of cancers (however ultimately medically identified and diagnosed) pertinent to his service connection claim pending at the time of his death.

The Board notes that the appellant submitted a new VA Form 9 in July 2016 (documented in Virtual VA) that included a request for a video hearing before the Board in this appeal. VA regulations provide, in pertinent part, that "a hearing on appeal will be granted if an appellant . . . expresses a desire to appear in person." 38 C.F.R. § 20.700(a) (2015). By the express language of the regulation, an appellant is entitled to only one hearing on appeal. The appellant testified at such a hearing in July 2015. The appellant was assisted by her representative at that hearing who asked questions pertaining to the issues on appeal. [The Board notes that an incorrect (former) Veterans Service Organization (VSO) was listed as her representative on the hearing transcript. However, the representative who assisted her during her hearing, L.P., was the same individual who noted her title as an American Legion representative on the February 2015 VA 646 Statement of Accredited Representative in Appealed Case. The American Legion was appointed prior to the hearing through a VA Form 21-22 signed in January 2015 and acknowledged by VA in March 2015.] The Board notes that the thoroughly prepared August 2016 brief from the appellant's representative does not make mention of a desire for a new Board hearing. As neither the appellant nor her representative provided a reason for wishing to testify at another hearing, and as there is no indication that the hearing provided in July 2015 was inadequate, the Board must decline the request for an additional hearing.

The August 2016 brief from the appellant's representative includes an assertion: "Whether it matters at this point or not the veteran appears to clearly be entitled to a 100% rating for his PTSD from the start." The August 2016 brief proceeds to present a number of arguments regarding the content of the evidence of record and regarding whether development had been appropriately completed and the complete evidentiary record was before the adjudicator at the time of a prior rating determination. It appears that this discussion in the August 2016 brief may be seeking to revise a prior final rating decision on the basis of clear and unmistakable error (CUE). Such a claim has not been adjudicated by the AOJ. The appellant and her representative are advised that if she wishes to formally pursue revision of a prior rating decision on the basis of CUE, or any other manner of claim that is not currently in appellate status before the Board, she should file a claim on the application form prescribed by the Secretary. See 38 C.F.R. § 3.155 (as amended, effective from March 24, 2015); 79 Fed. Reg. 57660 (Sept. 25, 2014) (final rule).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for the Veteran's variously diagnosed cancers (including right tonsillar squamous cell carcinoma (with metastases) and esophageal cancer), entitlement to SMC based on the need for A&A, and entitlement to service connection for the cause of the Veteran's death are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.

FINDINGS OF FACT

1. The RO denied the Veteran's claim of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) in a February 2004 decision; the Veteran was properly informed of the adverse decision and his appellate rights in a February 2004 letter, and he initiated an appeal of that decision, but did not perfect the appeal following the issuance of an October 2004 statement of the case; new and material evidence was not received during the one-year appeal period.

2. The evidence received since the February 2004 RO decision is not duplicative of evidence previously submitted; relates to an unestablished fact necessary to substantiate the claim of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer); and raises a reasonable possibility of substantiating such claim.

CONCLUSIONS OF LAW

1. The February 2004 RO decision denying service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) is final. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2015).

2. New and material evidence has been received, and the claim of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) may be reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156(a) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties of Notice and Assistance

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). In this case, the Board is granting in full the benefit sought as it pertains to whether to reopen the Veteran's previously denied claim of entitlement to service connection for right tonsillar squamous cell carcinoma (oropharynx cancer). Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and will not be further discussed.

Legal Criteria, Factual Background, and Analysis

Generally, an unappealed rating decision is final based on the evidence of record at the time of the decision, and may not be reopened or allowed based on such evidence. 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103. However, if new and material evidence is presented or secured with respect to a claim that has been disallowed, VA shall reopen the claim and review the former disposition of the claim. 38 U.S.C.A. § 5108.

"New" evidence means existing evidence not previously submitted to agency decision-makers. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

For the limited purpose of determining whether a claim should be reopened, the credibility of the newly submitted evidence is to be presumed. Fortuck v. Principi, 17 Vet. App. 173, 179-80 (2003). 

Service connection may be granted for disability resulting from personal injury suffered or disease contracted during active military service, or for aggravation of a pre-existing injury suffered, or disease contracted, during service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

To establish service connection for a disability there must be evidence of: (1) a present disability for which service connection is sought; (2) incurrence or aggravation of a disease or injury in service; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

The Board has reviewed the Veteran's entire record with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim.

Application to Reopen

In a February 2004 decision, the RO denied the Veteran's claim of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) based on finding that although the Veteran was presumed exposed to tactical herbicide agents in Vietnam, his cancer diagnosis was of a nature that was not medically linked to such exposure. He initiated an appeal of the February 2004 RO decision, but did not perfect that appeal to the Board following the issuance of an October 2004 statement of the case. VA did not receive any additional new and material evidence on this matter during the one-year appeal period. Hence, the February 2004 RO decision became final, and new and material evidence is required to reopen the claim. See 38 U.S.C.A. § 5108. Evidence of record at the time of the February 2004 RO decision included the Veteran's statements, his service treatment records, and a December 2003 VA examination with medical opinion concerning the nature and etiology of the Veteran's cancer diagnosis at that time.

Evidence received since the February 2004 decision includes an August 2015 private medical opinion from a Dr. White (documented in Virtual VA) indicating that the Veteran's "oropharyngeal cancer is as likely as not to have been caused by Agent Orange exposure." Additionally, evidence received since the February 2004 decision includes multiple VA medical records referring to the Veteran's cancer as featuring cancer of the larynx (including in August 2007, May 2011, and September 2011 reports discussed in more detail in the remand section, below). The Board notes that the pertinent list of diseases associated with exposure to certain tactical herbicide agents in 38 C.F.R. § 3.309(e) specifically includes "Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea) [emphasis added]."

The Board finds that the evidence received since February 2004 is "new" in that it was not of record (or in existence) at the time of the prior final denial of this claim. The Board finds that the evidence is "material" in that it presents information that, considered alone, tends to establish a previously unestablished fact that supports the Veteran's (and now the appellant's) claim and relates to the basis of the prior final denial. By indicating that the Veteran's cancer was related to in-service herbicide exposure or, alternatively, that his cancer could be medically characterized as a type of cancer presumed to be linked to such herbicide exposure, the new evidence presents a reasonable possibility of substantiating the claim.

Accordingly, the Board finds that the claim of service connection for entitlement to service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) is reopened. See 38 C.F.R. § 3.156(a).

ORDER

New and material evidence having been submitted, the appeal to reopen a claim of service connection for right tonsillar squamous cell carcinoma (oropharynx cancer) is reopened,

REMAND

The appellant contends that the Veteran's complex set of cancer diagnoses included at least one pertinent primary cancer diagnosis causally linked to the Veteran's in-service exposures and contributing to the causation of the Veteran's death. The Veteran's death certificate, as amended in August 2014 (and submitted to VA in September 2014), indicates that the Veteran died from an oropharyngeal bleed due to or as a consequence of oropharyngeal cancer due to or as a consequence of squamous cell carcinoma of the esophagus.

For purposes of establishing service connection for a disability resulting from exposure to an herbicide agent, a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962 and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during service. 38 U.S.C.A. § 1116(f). Exposure to herbicides is presumptively associated with certain specific disabilities and diseases listed at 38 C.F.R. § 3.309(e), should they have become manifest to a degree of 10 percent or more at any time after service (with an exception not applicable to this case). 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6)(ii).

There is no controversy in this case as to the fact that the Veteran's service met the conditions for the Veteran to be presumed to have been exposed to tactical herbicide agents during service. An essential questions in this case is whether the Veteran was diagnosed with a form of cancer that may be presumptively linked to in-service herbicide exposure (under 38 C.F.R. § 3.309(e)) or may otherwise be linked by medical evidence to in-service exposures. 

The Board remanded this case in September 2015 for the purpose of obtaining outstanding medical evidence and requesting a medical opinion addressing key medical questions central to the issues on appeal. The Board finds that the June 2016 VA medical opinion did not entirely adequately address the medical questions at issue (including with consideration of the June 2016 amendment to this opinion, documented in Virtual VA). Additionally, the August 2016 brief from the appellant's representative presents new evidence raising further medical questions and directing attention to a number of new contentions. The Board finds that further development of the record, featuring obtaining a new medical opinion, is necessary to support adequately informed appellate review of this case with consideration of each of the appellant's contentions. Finally, the August 2016 brief from the appellant's representative asserts that VA has failed to obtain the Veteran's records in the custody of the Social Security Administration (SSA); appropriate action to obtain any pertinent outstanding evidence in the possession of SSA shall also be completed during the processing of this remand.

The Board's September 2015 remand discussed uncertainty in the record regarding the specific nature and diagnoses of the Veteran's various manifestations of cancer, and the Board sought to (a) obtain outstanding medical evidence concerning the evaluation and treatment of the Veteran's cancer manifestations, and (b) obtain a medical opinion informed by review of the complete record to identify the nature and etiology of each cancer diagnosis found.

Amongst other questions, the Board's September 2015 remand specifically asked the examiner: "Based on the information and medical documentation available, please identify and clarify each of the various cancer diagnosis shown." The June 2016 VA medical opinion explains that the Veteran had tonsillar cancer that apparently metastasized to the Veteran's tongue, and that the Veteran had a distinct diagnosis of esophageal cancer. The June 2016 VA medical opinion did not otherwise identify and clarify each of the potentially pertinent cancer diagnoses shown in the medical evidence of record.

The Board notes that the pertinent list of diseases associated with exposure to certain tactical herbicide agents in 38 C.F.R. § 3.309(e) specifically includes "Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea) [emphasis added]." This case raises the need for particular attention to the question of whether the Veteran had a cancer of the larynx. An August 2007 VA medical report for the surgical placement of a "percutaneous endoscopic gastrostomy tube" shows a preoperative diagnosis of "laryngeal cancer," and a postoperative diagnosis of "same." A May 2011 VA medical report (available in Virtual VA with CAPRI records filed under the date February 11, 2013) refers to the Veteran having a history of "CA LARYNX 2003 AND SPREAD TO TONGUE 2005...." The record repeats the medical characterization of "CANCER OF THE LARYNX IN 2003 ... spread to tongue in 2005" with additional references to cancer of the larynx. One of the report's references describes the diagnosis in the present tense: "PT HAS CANCER OF LARYNX S/P []RADIATION AND CHEMOTHERAPY AND DIFFUSE INDURATION RT MANDIBULAR AREA." The reference is essentially repeated in the summary "MALE WITH CA OF LARYNX AND TONGUE," and the list of actively treated diagnoses includes "CA LARYNX" in addition to "CA TONGUE" and "NEOPLASM OF HEAD AND NEC[K]." A September 2011 VA medical report (also available in Virtual VA with CAPRI records filed under the date of February 11, 2013) from the same provider similarly describes ongoing treatment for cancer characterized as of the larynx: "WITH CA LARYNX HAVING RADIATION AND CHEMOTHERAPY IN VA BHM."

A cancer of the larynx is considered (by express listing) to be a respiratory cancer in the provisions of 38 C.F.R. § 3.309(e), and thus cancer of the larynx would be presumed to be causally related to the Veteran's in-service exposure to tactical herbicide agents. The June 2016 VA medical opinion does not discuss the indications of cancer of the larynx, it simply concludes: "The veteran had two distinct cancers, one originally from the tonsils and the other from the esophagus." The June 2016 VA medical opinion concludes that the tonsil cancer was "an oropharyngeal cancer" that is not a "respiratory tract cancer[] ... related to agent orange." However, the significance of the multiple medical notations of record concerning a diagnosis of cancer of the larynx remain unclear, and the June 2016 VA medical opinion does not discuss the matter of the documented diagnoses of cancer of the larynx.

The question of whether the Veteran had a primary cancer of the larynx is an essential medical question for informed appellate review of this case. The appellant contends that consideration of this case has fundamentally misconstrued the Veteran's pertinent medical history. In March 2014 correspondence, the appellant asserted that "the Veteran's PRIMARY site was the CA of the LARYNX, which IS a PRESUMPTIVE condition of AO exposure, and the resulting additional cancers in the surrounding oroesophageal areas AND the LYMPHOMA can all be considered secondary to the original PRESUMPTIVE LARYNGEAL CA, THEREBY making his death Service Connected." This important assertion involves a medical matter regarding which the Board must rely upon competent medical evidence to make a determination. Accordingly, the Board must seek a competent medical opinion to address the matter such that the Board may complete an adequately informed final appellate review.

The Board's September 2015 remand also specifically asked: "Did the Veteran have a diagnosis of esophageal cancer and/or lymphoma that was at least as likely as not (a 50 percent or greater probability) distinct from the previously diagnosed squamous cell carcinoma (oropharynx cancer)?" The June 2016 VA medical opinion explains that the Veteran had tonsillar cancer that apparently metastasized to the Veteran's tongue, and that the Veteran had a distinct diagnosis of esophageal cancer. The June 2016 VA opinion did not discuss the question of whether the Veteran had a distinct diagnosis of lymphoma to respond to the question posed by the Board's September 2015 remand.

The appellant has repeatedly asserted that amongst the Veteran's complex set of cancer diagnoses was lymphoma. In her March 2014 written statement she asserts that "In 2010, the Veteran was diagnosed with Lymphoma and treated at the Birmingham Alabama VAMC." In another March 2014 written statement, she asserts that "[i]n 2010 [h]e developed CA of the LYMPH GLANDS ... for which he was treated at the Birmingham VAMC on a regular basis for the next two years." The Board is unable to identify clear confirmation of this assertion in its review of the medical evidence (including the medical evidence newly added during the processing of the September 2015 Board remand); the Board does observe that the Veteran's medical records show that he was evaluated for lymphadenopathy prior to 2010 (including in 2007). Additionally, the August 2016 brief from the appellant's representative includes documentation suggesting that the Veteran's diagnosed tonsillar cancer could be medically considered a cancer of the lymphatic system. The August 2016 brief directs attention to an attachment that appears to be a printout of a va.gov webpage that includes a "Glossary" for "Lymphoid tissue organs (lymph node, spleen, thymus, adenoids)" that lists "Tonsils" as a term defined in part as "A rounded mass of lymphatic tissue ...," and further states that "[t]he tonsils are the lymph tissues associated with the respiratory system."

The Board notes that "Non-Hodgkin's lymphoma" is a diagnosis listed in 38 C.F.R. § 3.309(e) for which service connection may be presumed on the basis of exposure to tactical herbicides during service. The Board finds that a medical opinion is required to directly address the question of whether the Veteran had a diagnosis of lymphoma as one of his primary cancer pathologies (as distinguished from a metastasis of a different primary cancer to the lymphatic system), and to address whether any such diagnosis (if not presumptively linked to herbicide exposure) may be etiologically linked to the Veteran's military service to include in-service exposures.

The Board additionally notes that the June 2016 VA medical opinion makes reasonably clear the author's assertion that the Veteran's tonsillar cancer was not a respiratory tract cancer and not related to exposure to tactical herbicide agents, but the June 2016 VA medical opinion does not present as clear of an opinion regarding the Veteran's esophageal cancer diagnosis. Rather, the June 2016 VA medical opinion states that the "distinct esophageal cancer ... did not play a roll [sic] in the immediate cause of death," suggesting a reason that no discussion of etiology was believed to be required. The Board observes (as acknowledged by the June 2016 VA medical opinion's summary of review of pertinent documents) that the Veteran's death certificate lists squamous cell cancer of the esophagus as a cause of the Veteran's death. Fully informed appellate review of this case requires that the Board actually obtain the previously sought medical opinions concerning whether the Veteran's esophageal cancer was a respiratory cancer and whether it may otherwise have been etiologically linked to the Veteran's in-service exposure to tactical herbicides. The new VA medical opinion shall also have the opportunity to consider and address the appellant's arguments, including as recently presented in the August 2016 brief, asserting that the esophagus is part of the respiratory tract (directing attention to the role of esophageal dysfunction or obstruction in respiratory impairments such as sleep apnea).

The Board also notes that the appellant's representative, in the August 2016 brief, has directed the Board's attention to a printout (attached to the August 2016 brief) of a portion of what appears to be a potentially pertinent va.gov webpage (although the Board has not been successful in locating the original page as of this time). The printed content shows that a "Glossary" of terms concerning "Lymphoid tissue organs" includes that statement: "The tonsils are the lymph tissues associated with the respiratory system [emphasis added]." To ensure fully informed appellate review, it would be of great assistance to the Board for the new forthcoming VA medical opinion to discuss the significance of this submitted document with regard to the matter of determining whether or not cancer of the tonsils is properly medically characterized as a respiratory cancer.

The August 2016 brief from the appellant's representative furthermore raises arguments that direct the Board's attention to additional pertinent medical questions in this case. The appellant's representative directs attention to the provisions of 38 C.F.R. § 3.312(c)(3) directing that:

diseases or injuries involving active processes affecting vital organs should receive careful consideration as a contributory cause of death, the primary cause being unrelated, from the viewpoint of whether there were resulting debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other disease or injury primarily causing death.

The August 2016 brief argues that the Veteran's service-connected posttraumatic stress disorder (PTSD) was a disease involving active processes that affect vital organs, specifically identifying the brain. The August 2016 brief further notes that the Veteran's service-connected PTSD was rated 100 percent disabling at the time of his death, and that 38 C.F.R. § 3.312(c)(3) provides that: "Where the service-connected condition affects vital organs as distinguished from muscular or skeletal functions and is evaluated as 100 percent disabling, debilitation may be assumed." The Board finds that consideration of this argument raises important medical questions centering on the matter of determining whether the Veteran's PTSD was a disease involving active processes that affect vital organs. The Board must seek a competent medical opinion addressing these questions.

The August 2016 brief further argues that the Veteran's service-connected PTSD may otherwise be considered to have been a medical contributing cause of the Veteran's death and/or to have casually contributed to his incurrence of cancer. In this regard, the August 2016 brief includes, as an attachment, a printed abstract from a March 2009 medical article entitled "Psychological distress and cancer mortality" from the Journal of Psychosomatic Research. The abstract begins with the contextual sentence: "Psychological distress, such as ongoing depression and anxiety-related symptomatology, has been associated with a higher risk of incident cancer and poorer survival...." The abstract presents a conclusion that "Psychological distress was a predictor of cancer mortality...." The August 2016 brief and this attachment reasonably raise the question of whether the Veteran's service-connected and 100 percent disabling PTSD may be reasonably considered to have contributed to the Veteran's incurrence of any pertinent cancer diagnosis, to have aggravated the severity of his cancer manifestations, and/or to have contributed to the Veteran's death associated with cancer diagnoses (including a suggestion that PTSD causes unhealthy decisions and behaviors that may contribute to pertinent negative health outcomes). A competent medical opinion addressing these questions (with consideration of the submitted medical literature) will be of great assistance to the Board in completing an adequately informed final appellate review, and such an opinion should be obtained in the processing of this remand.

The August 2016 brief also argues that the Veteran's cancer may be etiologically linked to other in-service exposures. The representative argues: "Agent Blue was used in Vietnam. Agent Blue is arsenic based. Arsenic is known to cause squamous cell carcinomas such as the veteran's." The representative's brief cites six sources of a medical/scientific nature to support this argument. The Board takes judicial notice of the fact that Agent Blue was a mixture of two arsenic-containing compounds: sodium cacodylate and cacodylic acid. Because the Veteran served in Vietnam during the Vietnam Era, he may be presumed to have been exposed to herbicide agents, which may include Agent Blue. 38 C.F.R. § 3.307(a)(6)(iii). A medical opinion addressing the question of whether any of the Veteran's cancers may have been etiologically linked to exposure to Agent Blue during service would be of significant assistance to supporting fully informed appellate review in this matter.

The August 2016 brief also argues that "[i]t is also a given that the veteran ingested ... benzenes associated with combat engineer heavy equipment." The Board notes that the Veteran's service personnel records confirm that he was a combat engineer. The medical question of whether any alleged in-service benzene exposure may have caused one of the Veteran's pertinent cancers is another matter that should be addressed by the new VA medical opinion to be obtained in this case.

The Board also notes that the August 2016 brief cites a pair of medical/scientific sources to support the assertion that the exposure to dioxins may be linked to causing one or more of the types of cancers that the Veteran suffered beyond the scope of the legal presumption of a link to tactical herbicide exposure. This presents another medical question that can be addressed by the new VA medical opinion to be obtained in this case.

The Board acknowledges that the August 2016 brief additionally asserts that "[t]he 2012 IOM update associates HPV with tonsil cancer," with a URL citation, and argues that "HPV is a venereal disease and the veteran's one known venereal infection was in service." The argument proceeds to acknowledge that "[t]here seems to be no positive confirmation of HPV in the medical records present." The Board notes that the Veteran's service treatment records document that he was treated for "gonorrheal urethritis" in December 1969, with no suggestion of HPV. The Board finds that there is no basis presented for requesting a medical opinion regarding this theory of entitlement in this case; the evidence does not indicate that the Veteran had an HPV infection during service.

Additionally, the August 2016 brief contains the assertion: "The VA has never yet requested the veteran's Social Security file," and then discusses VA's duty "to obtain evidence from the Social Security Administration, including any decisions by the administrative law judge, and to give that evidence appropriate consideration and weight." The Veteran's Social Security Administration (SSA) records are not associated with the claims file. As these records may contain pertinent information as to the Veteran's appeal, they must be obtained. Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010).

The Board notes that the August 2016 brief also contains the assertion that "VA made no effort to obtain ... unit records and reports," but the Board reads this contention as part of the brief's presentation of an argument seeking to establish "a procedural error ... that vitiates the finality of an RO decision for purposes of direct appeal" in connection with the attempt to revise a prior rating determination beyond the scope of the issues currently on appeal before the Board (as discussed in the introduction section, above). The Board notes that the details of the Veteran's in-service exposures are not currently in significant controversy in this case and the Board does not find that additional development of service records is indicated at this time for this appeal.

Additionally, the August 2016 brief asserts that "the entire VA part of the file is still NOT here now, as the veteran was apparently on pension in 2004." The argument presented here is not entirely clear to the Board, but the Board observes that the Veteran's pension entitlement was established in a February 2004 RO rating decision and the basis for that decision appears to be appropriately documented in the contents of the claims-file available for review at this time. Thus, the Board finds that no further development to complete the claims-file is indicated in this regard at this time.

The outcome of pending issues being remanded by the Board at this time shall significantly impact the scope of the analysis of the claim of entitlement to SMC based on the need for regular A&A or at the housebound rate. Thus, the issues are inextricably intertwined. Final appellate review of the SMC issue must be deferred until the appropriate actions concerning the intertwined service connection issues are completed and the matters are either resolved or prepared for appellate review. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should contact the Social Security Administration and obtain any administrative decisions and all medical records used in any pertinent adjudication concerning disability benefits for the Veteran. If the AOJ determines that such SSA records are unavailable or do not exist, this determination must be documented in a formal finding for the record.

2. After the record is determined to be complete, the AOJ should forward the record to a VA oncologist and/or other appropriate physician(s), for medical opinions clarifying significant medical questions in this case including with regard to the nature of the Veteran's shown cancer diagnoses and the relationship of each to the causes of his death. The entire record must be reviewed by the opinion provider(s). Based on a review of the record, the physician(s) should provide opinions that respond to the following:

a) Based on the information and medical documentation available, please identify and clarify each of the various cancer diagnoses shown.

In responding to this, please note that the prior June 2016 VA medical opinion found that the Veteran had (a) tonsillar squamous cell carcinoma that spread to his tongue and (b) a distinct diagnosis of squamous cell carcinoma of the esophagus, but did not discuss the other possible cancer diagnoses raised by evidence and contentions in this case.

b) Please specifically clarify whether the Veteran had a primary cancer of the larynx.

In responding to this, please specifically discuss the August 2007 VA medical report for the surgical placement of a "percutaneous endoscopic gastrostomy tube" showing preoperative and postoperative diagnoses of "laryngeal cancer." Please also specifically discuss the May 2011 VA medical report that repeatedly refers to the Veteran having a history of "CA LARYNX 2003 AND SPREAD TO TONGUE 2005...," describes that the "PT HAS CANCER OF LARYNX S/P []RADIATION AND CHEMOTHERAPY AND DIFFUSE INDURATION RT MANDIBULAR AREA," summarizes that the Veteran had "CA OF LARYNX AND TONGUE," and lists actively treated diagnoses including "CA LARYNX" in addition to "CA TONGUE" and "NEOPLASM OF HEAD AND NEC[K]." Please also specifically discuss the September 2011 VA medical report from the same provider that similarly describes ongoing treatment for cancer characterized as of the larynx: "WITH CA LARYNX HAVING RADIATION AND CHEMOTHERAPY IN VA BHM." Please also discuss the December 2003 VA medical opinion indicating that the tonsil cancer was best characterized as pharyngeal rather than laryngeal.

c) Please specifically clarify whether the Veteran had any cancer that may be properly medically characterized as a non-Hodgkin's lymphoma. In responding to this, please note that the appellant has asserted that the Veteran was diagnosed with lymphoma in 2010 and treated at the Birmingham VAMC (asserted in her March 2014 written statements). Please also discuss the August 2016 brief from the appellant's representative that asserts that cancer of the tonsil is a non-Hodgkin's lymphoma because the tonsil contains lymphatic tissue.

In responding to this, please specifically discuss the document attached to the August 2016 brief that appears to be a printout of a va.gov webpage that includes a "Glossary" of "Lymphoid tissue organs (lymph node, spleen, thymus, adenoids)," that lists "Tonsils" as a term defined in part as "A rounded mass of lymphatic tissue ...," and further states that "[t]he tonsils are the lymph tissues associated with the respiratory system."

d) Please specifically clarify whether the Veteran had any cancer that may be properly medically characterized as a respiratory cancer. 

In responding to this, please specifically discuss the document attached to the August 2016 brief that appears to be a printout of a va.gov webpage that includes a "Glossary" of "Lymphoid tissue organs (lymph node, spleen, thymus, adenoids)," that states that "[t]he tonsils are the lymph tissues associated with the respiratory system [emphasis added]."

In responding to this, please also specifically discuss the portions of the August 2016 brief and its attachments asserting that the esophagus is part of the respiratory tract (directing attention to the role of esophageal dysfunction or obstruction in respiratory impairments such as sleep apnea). 

e) Please explain for each cancer diagnosis shown whether it was likely a primary cancer diagnosis or, rather, a metastasis deriving from another cancer diagnosis.

f) For each distinct cancer diagnosis found, is it at least as likely as not (i.e., a 50 percent or greater probability) that the diagnosis was an immediate or underlying cause of the Veteran's death or was etiologically related thereto. Please note: A "principal cause of death" is the immediate or underlying cause of death or was etiologically related thereto. A "contributory cause of death" is one which contributed substantially or materially to cause death, or aided or lent assistance to the production of death.

g) Based upon the available information, is it at least as likely as not (a 50 percent or greater probability) that any of the Veteran's cancer diagnoses were causally / etiologically related to his active duty military service, to include the exposures cited by the appellant's representative involving tactical herbicide agents Agent Orange (cited for dioxin exposure), Agent Blue (cited for arsenic exposure), and benzenes in Vietnam?

In answering this question, please consider and discuss the contents of the appellant's August 2016 brief and its attached medical/scientific documentation suggesting (i) a causal link between dioxin exposure and potentially pertinent types of cancer, and (ii) a causal link between arsenic exposure and potentially pertinent types of cancer (including squamous cell carcinomas). Please also discuss the August 2015 private medical opinion from Dr. White indicating that the Veteran's "oropharyngeal cancer is as likely as not to have been caused by Agent Orange exposure."

h) Is the brain properly medically characterized as a "vital organ"? (Questions h, i, j, and k are asked for the purposes of informing the application of the provisions of 38 C.F.R. § 3.312(c)(3), as raised by the appellant's arguments in the August 2016 brief.)

i) If the brain is a "vital organ," was the Veteran's PTSD a disease that involved "active processes affecting" the brain?

j) Were any other "vital organs" affected by "active processes" of the Veteran's PTSD?

k) If the Veteran's PTSD is properly characterized as a "disease ... involving active processes affecting vital organs," were the resulting debilitating effects and general impairment of health associated with the PTSD of an extent that would have rendered the Veteran "materially less capable of resisting the effects of other disease or injury primarily causing death."

l) Is it at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's service-connected PTSD caused or materially contributed to the Veteran's death, taking into consideration the articles submitted by the appellant? Please note: A "principal cause of death" is the immediate or underlying cause of death or was etiologically related thereto. A "contributory cause of death" is one which contributed substantially or materially to cause death, or aided or lent assistance to the production of death.

In answering this question, please specifically discuss the document submitted by the appellant's representative as an attachment to the August 2016 brief featuring a printed abstract from a March 2009 medical article entitled "Psychological distress and cancer mortality" from the Journal of Psychosomatic Research. Please note that the abstract begins with the sentence: "Psychological distress, such as ongoing depression and anxiety-related symptomatology, has been associated with a higher risk of incident cancer and poorer survival...." The abstract presents a conclusion that "Psychological distress was a predictor of cancer mortality...." Please explain whether the Veteran's service-connected and 100 percent disabling PTSD may be reasonably considered to have contributed to the Veteran's incurrence of any pertinent cancer diagnosis, to have aggravated the severity of his cancer manifestations, and/or to have contributed to the Veteran's death associated with cancer diagnoses (including, as argued in the August 2016 brief, through unhealthy decisions and behaviors that may contribute to pertinent negative health outcomes).

The opinion provider must explain the conclusions for each answer provided, citing to the medical records and other medical evidence as appropriate. All rationales should include citation to supporting clinical data or medical literature and principles, as appropriate.

3. The AOJ should ensure that all development outlined above is completed and then readjudicate the claims on appeal. If any claim on appeal remains denied, the AOJ should issue an appropriate supplemental statement of the case and afford the appellant and her representative the opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs