Citation Nr: 1829857 
Decision Date: 09/05/18 Archive Date: 09/24/18

DOCKET NO. 09-38 015 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim for service connection for allergic rhinitis.

2. Whether new and material evidence has been submitted to reopen a claim for service connection for sinusitis.

3. Whether new and material evidence has been submitted to reopen a claim for service connection for loss of vision.

4. Whether new and material evidence has been submitted to reopen a claim for service connection for swelling of the left face.

5. Entitlement to service connection for polyarthritis of the bilateral lower extremities, to include as due to an undiagnosed illness under 38 C.F.R. § 3.317.

6. Entitlement to service connection for hyperinsomnia with sleep apnea, to include as due to an undiagnosed illness under 38 C.F.R. § 3.317.
7. Entitlement to service connection for swelling of the left face, to include as due to an undiagnosed illness under 38 C.F.R. § 3.317. 


REPRESENTATION

Appellant represented by: Puerto Rico Public Advocate for Veterans Affairs


ATTORNEY FOR THE BOARD

J. Crawford, Associate Counsel


INTRODUCTION

The Veteran had active military service from June 1982 to July 1992, including service in the Southwest Asia Theatre of Operations during the Gulf War from October 1990 to June 1991. 

This appeal comes to the Board of Veterans' Appeals (Board) from November 2004 and October 2008 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico. 

Records show that in June 2016, the Veteran revoked the Puerto Rico Public Advocate for Veterans Affairs' authority to act on his behalf as his representative. However, in October 2017, the Veteran again assigned power of attorney to the Puerto Rico Public Advocate for Veterans Affairs. Therefore, the Puerto Rico Public Advocate for Veterans Affairs is currently the Veteran's representative. 

In May 2018, VA sent the Veteran's representative a letter requesting a written presentation or brief regarding the Veteran's claims. To this date, the Veteran's representative has not responded. 

In June 2011 and April 2017, the Board remanded the claims for further development. 

This appeal has been advanced on the Board's docket pursuant to 38 U.S.C. § 7107(a)(2) (2012) and 38 C.F.R. § 20.900(c) (2018).


FINDINGS OF FACT

1. An unappealed September 2004 rating decision denied service connection for allergic rhinitis and sinusitis. 

2. Evidence received since the September 2004 rating decision does not relate to an unestablished fact necessary to substantiate the claims and does not raise a reasonable possibility of substantiating the claims for service connection for allergic rhinitis and sinusitis. 

3. An unappealed September 2004 rating decision denied service connection for loss of vision.

4. Evidence received since the September 2004 rating decision does not relate to an unestablished fact necessary to substantiate the claim and does not raise a reasonable possibility of substantiating the claim for service connection for loss of vision. 

5. An unappealed September 2004 rating decision denied service connection for swelling of the left face. 

6. Evidence received since the September 2004 rating decision is not cumulative, was not previously considered by decision makers, and raises a reasonable possibility of substantiating the claim for service connection for swelling of the left face. 

7. It has not been shown that the Veteran's polyarthritis of the bilateral lower extremities is of service onset, manifested within the first postservice year, or is otherwise related to his military service, to include as due to an undiagnosed illness. 

8. The Veteran's sleep complaints have been attributed to obstructive sleep apnea, which is a known diagnosed disability, and the disorder is not shown to be related to his military service, to include as due to an undiagnosed illness. 

9. It has not been shown that the Veteran's swelling of the left face is related to his military service, to include as due to an undiagnosed illness. 


CONCLUSIONS OF LAW

1. New and material evidence has not been received to warrant reopening of the claim for service connection for allergic rhinitis. 38 U.S.C. §§ 5107, 5108 (2012); 38 C.F.R. § 3.156 (2018).

2. New and material evidence has not been received to warrant reopening of the claim for service connection for sinusitis. 38 U.S.C. §§ 5107, 5108 (2012); 38 C.F.R. § 3.156 (2018).

3. New and material evidence has not been received to warrant reopening of the claim for service connection for loss of vision. 38 U.S.C. §§ 5107, 5108 (2012); 38 C.F.R. § 3.156 (2018).

4. New and material evidence has been received to warrant reopening of the claim for service connection for swelling of the left face. 38 U.S.C. §§ 5107, 5108 (2012); 38 C.F.R. § 3.156 (2018).

5. The criteria for service connection for polyarthritis of the bilateral lower extremities are not met. 38 U.S.C. §§ 1110, 1112, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 307, 309, 3.317 (2018). 

6. The criteria for service connection for hyperinsomnia with sleep apnea, to include as due to an undiagnosed illness, are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.317 (2018). 

7. The criteria for service connection for swelling of the left face are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.317 (2018). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

A. New and Material Evidence

A previously denied claim may be reopened by submission of new and material evidence. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2018). Evidence is new if it has not been previously submitted to agency decision makers. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156(a) (2018). Evidence is material if it, either by itself or considered in conjunction with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. Id. New and material evidence cannot be cumulative or redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id. 
 
When determining whether the claim should be reopened, the credibility of the newly submitted evidence is generally to be presumed. Fortuck v. Principi, 17 Vet. App. 173, 179-80 (2003); Justus v. Principi, 3 Vet. App. 510 (1992). Moreover, in Shade v. Shinseki, 24 Vet. App. 110, 117 (2010), the United States Court of Appeals for Veterans Claims (Court) clarified that the phrase "raises a reasonable possibility of substantiating the claim" is meant to create a low threshold that enables, rather than precludes, reopening. Specifically, the Court stated that reopening is required when the newly submitted evidence, combined with VA assistance and considered with the other evidence of record, raises a reasonable possibility of substantiating the claim. Id. 


i. Allergic Rhinitis/Sinusitis

Service connection for allergic rhinitis claimed as chronic sinus was denied in a December 2001 rating decision essentially on the basis that there was no evidence of record to support a diagnosis of chronic sinusitis. A September 2004 rating decision continued the denials for service connection for sinusitis and allergic rhinitis. The Veteran did not appeal that decision, or submit new and material evidence within one year of notice of that decision; therefore, it is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 3.156(a), (b) (2018). 

The evidence received since the September 2004 rating decision includes VA treatment records that are silent for any current diagnoses of allergic rhinitis or chronic sinusitis. Although this evidence is new, it is not material because it does not show that the Veteran is currently diagnosed with allergic rhinitis or sinusitis, had sinusitis or allergic rhinitis while in service, or link the claimed conditions to the Veteran's active military service. Accordingly, the claims for entitlement to service connection for allergic rhinitis and sinusitis are not reopened. 

ii. Loss of Vision

Service connection for refractive error claimed as loss of vision was denied in a December 2001 rating decision essentially on the basis that the Veteran was diagnosed with developmental conditions, refractive error of the eye and dry eye syndrome, that were neither incurred in nor caused by military service. A September 2004 rating decision continued the denial for service connection for loss of vision. The Veteran did not appeal that decision, or submit new and material evidence within one year of notice of that decision; therefore, it is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 3.156(a), (b) (2018). 

The evidence received since the September 2004 rating decision includes VA treatment records that are silent for any other vision loss problems. Although this evidence is new, it is not material because it does not show that the Veteran had an eye condition other than a developmental condition. Accordingly, the claim for entitlement to service connection for loss of vision is not reopened. 

iii. Swelling of the Left Face

Service connection for swelling of the left side of the face was denied in a December 2001 decision essentially on the basis that the evidence of record did not show a current diagnosis of edema (e.g., swelling), and that the evidence did not show that an injury or disease in service had caused any edema to the Veteran's left face. A September 2004 decision continued the denial for service connection for swelling of the left face. The Veteran did not appeal that decision, or submit new and material evidence within one year of notice of that decision; therefore, it is final. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 3.156(a), (b) (2018). 

The evidence received since the September 2004 RO decision includes VA treatment records, dated January 2005 and October 2007 that show that the Veteran had facial swelling. Particularly, in January 2005, the Veteran reported that he had a history of an "abscess" of the lower jaw. It was noted that the Veteran had a large white pustule inside of his mouth near the base of his teeth. The Board finds that this new evidence relates to an unestablished fact necessary to substantiate the claim of service connection for swelling of the left face, and therefore raises a reasonable possibility of substantiating such claim. See Shade, 24 Vet. App. at 117-18. Thus, the Board finds that the additional evidence is both new and material, and the claim for entitlement to service connection for swelling of the left face is reopened. 

B. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2018). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2018). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Certain chronic diseases, which are listed in 38 C.F.R. § 3.309(a), including arthritis, may be presumed to have been incurred during service if manifested to a compensable degree within one year of separation from active service. 38 U.S.C. §§ 1112, 1113, 1137 (2012); 38 C.F.R. §§ 3.307, 3.309 (2018).

With chronic disease shown as such in service (or within the presumptive period under 38 C.F.R. § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b) (2018). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. Id. However, if chronicity in service is not established or where the diagnosis of chronicity may be legitimately questioned, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303(b) (2018). A claimant "can benefit from continuity of symptomatology to establish service connection in the ultimate sense, but only if [the] chronic disease is one listed in § 3.309(a)." Walker, 708 F.3d at 1337. Service connection may nonetheless be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2018).

Service connection may also be granted on a presumptive basis for a Persian Gulf veteran who exhibits objective indications of qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2021, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.§ 1117; 38 C.F.R. § 3.317(a)(1) (2018). In claims based on qualifying chronic disability, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Laypersons are competent only to report objective signs of illness.

A "qualifying chronic disability" for VA purposes is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multisymptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (C) any diagnosed illness that the Secretary determines in regulation prescribed under 38 U.S.C. § 1117(d) warrants a presumption of service connection. 38 U.S.C. § 1117(a)(2) (2012); 38 C.F.R. § 3.317(a)(2)(i)(B) (2018). 

"Objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to a physician, and other, non-medical indicators that are capable of independent verification. To fulfill the requirement of chronicity, the illness must have persisted for a period of six months. 38 C.F.R. § 3.317(a)(2), (3) (2018). Signs or symptoms that may be manifestations of undiagnosed illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; and (12) abnormal weight loss. 38 C.F.R. § 3.317(b) (2018).

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2) (2018). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102 (2018). When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

Here, the Veteran's DD-214 shows that he had active military service in the Southwest Asia theatre from October 1990 to June 1991. Therefore, the Board does not dispute the Veteran's status as a Persian Gulf veteran as set forth in 38 C.F.R. § 3.317. 

i. Polyarthritis of the Bilateral Lower Extremities

The Veteran seeks service connection for polyarthritis of the bilateral lower extremities. The Veteran contends that pain in his knees and ankles was caused by his military service or being exposed to environmental hazards during the Gulf War. See January 2008 Statement in Support of Claim and May 2017 VA examination. 

The Veteran's service treatment records are silent for any signs, symptoms, or diagnosis of polyarthritis of the bilateral lower extremities. Service treatment records are also silent for any knee or ankle pain during service.

Postservice treatment records show that the Veteran complained of pain in his bilateral lower extremities. Records furnished by the Social Security Administration show that in December 1997 the Veteran complained of having arthritic pain since 1993. In January 1998, the Veteran reported that his arthralgia started in his ankles about three years prior. In a May 2001 VA treatment record, it was noted that the Veteran complained of weakness and arthralgia, specifically in the ankles, hands, and knees. A May 2005 VA treatment record revealed that the Veteran had a history of polyarthralgia, with pain becoming worse with exposure to the cold. 

In October 2001, the Veteran was afforded a VA examination for his joints. The Veteran reported that he had a history of joint swelling and pain in the knees, ankles, and the digits of both hands since 1993. The VA examiner concluded that there was no evidence in the Veteran's service treatment records of joint swelling or joint pain. The first evidence that appeared in the Veteran's record about joint swelling or pain was a progress note from VA hospital with complaints of bilateral hands and knee pain. In May 2017, the Veteran was diagnosed with bilateral ankle degenerative joint disease with enthesopathic changes and bilateral knee degenerative arthritis.

Based on the foregoing, as there is no showing of bilateral ankle or bilateral knee arthritis in service or to a compensable degree in the year after service, presumptive service connection for polyarthritis of the bilateral lower extremities as a chronic disease is not warranted. See 38 C.F.R. § 3.309(a) (2018). Neither is there a basis for granting service connection for polyarthritis of the bilateral lower extremities on the basis of continuity of symptomatology since there were no manifestations of the disabilities within service. See 38 C.F.R. § 3.303(b) (2018); see also Savage v. Gober, 10 Vet. App. 488 (1997). 

Additionally, service connection cannot be granted on a presumptive basis under 38 C.F.R. § 3.317. Although it is conceded that the Veteran served in the Southwest Asia theatre of operations during the Persian Gulf War, the medical evidence of record confirms that the Veteran's claimed symptoms are attributed to known clinical diagnoses - bilateral ankle degenerative joint disease with enthesopathic changes and bilateral knee degenerative arthritis. Therefore, service connection for a polyarthritis of the bilateral lower extremities on a Persian Gulf presumptive basis is not warranted. 

Next, the Board looks to the medical opinions of record to determine whether the Veteran's disability is otherwise related to his military service. In March 2016, the Veteran was afforded a VA examination. The VA examiner opined that it was less likely than not that the Veteran's polyarthritis of the bilateral lower extremities was incurred in or caused by service. The VA examiner explained that the present x-ray and CAT scan findings of the bilateral lower extremities were compatible with degenerative changes related to the normal aging process, and not related to the Veteran's active military service. 

In May 2017, the VA examiner opined that the claimed condition less likely than not had its onset in active service or within the first postservice year, or was otherwise related to a disease or injury in active service, to include exposure to a hazardous environment and petroleum fumes and other gases during active service in Saudi Arabia from October 1990 to June 1991. The VA examiner explained that the nature and etiology of both ankle and knee disorders were due to normal aging process. There was significant medical literature evidence that supported the fact that actual bilateral knee and ankle conditions were considered part of normal aging process in veterans older than 40 years old. It was worth mentioning that current bilateral ankle and knee conditions were diagnosed by imaging study, several years after active duty service. As mentioned before, the findings of the ankles and knees were specifically related to the Veteran's natural process of aging. The VA examiner further explained that bilateral ankle degenerative joint disease with enthesopathic changes and bilateral knee degenerative joint disease were conditions with a clear and specific etiology and diagnosis not related to being exposed to environmental hazards during service in Southwest Asia. There was no evidence on medical literature to support any etiology that linked actual bilateral ankle or knee conditions to environmental hazards (ex: fumes, dust, and smoke) during service in Southwest Asia. 

Regarding whether the Veteran's polyarthritis of the bilateral lower extremities is related to his military service, the Board assigns great weight and probative value to the March 2016 VA medical opinion in tandem with the May 2017 VA medical opinion. In his May 2017 VA medical opinion, the VA examiner fully and thoroughly addressed the Veteran's medical history, including lay history, and provided a detailed and sufficient rationale as to why the Veteran's disability was not related to his military service. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

As for the statements from the Veteran relating his bilateral knee and bilateral ankle arthritis conditions to his military service, while he may be competent to testify as to the symptoms he experiences, it is beyond his competence as a layperson to opine regarding medical etiology. The Veteran lacks the training to opine whether one disability is caused or aggravated by another or etiologically related to military service; this is a question that is medical in nature and may not be resolved by mere lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (whether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board rather than a legal issue to be addressed by the Veteran's Court). 

In conclusion, the claim for service connection for polyarthritis of the bilateral lower extremities is not warranted. 

ii. Sleep Apnea

The Veteran seeks service connection for hyperinsomnia with sleep apnea. The Veteran contends that his sleep apnea was caused by his military service or being exposed to environmental hazards during the Gulf War. See January 2008 Statement in Support of Claim.

The Veteran's service treatment records are silent for any signs, symptoms, or diagnosis of sleep apnea. 

Postservice treatment records show that the Veteran had problems with sleeping. Records furnished by the Social Security Administration show that in an August 1997 VA medical record, the Veteran complained of insomnia. In January 1998, the Veteran reported that he had poor sleep since he returned from the Gulf War. A June 2007 VA treatment record revealed that the Veteran had obstructive sleep apnea to a severe degree. 

During a March 2016 VA examination, the Veteran was diagnosed with obstructive sleep apnea with an onset date of March 2007. 

Service connection cannot be established on a presumptive basis under 38 C.F.R. § 3.317. Although the Veteran served in the Southwest Asia theatre of operations during the Persian Gulf War, the medical evidence of record shows that the Veteran's claimed disorder has been diagnosed specifically as obstructive sleep apnea, and therefore does not amount to an undiagnosed disease under 38 C.F.R. § 3.317.
 
Next, the Board looks to the medical opinions of record to determine whether the Veteran's disability is related to his military service. In March 2016, the VA examiner opined that sleep apnea was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. Service treatment records were silent for complaints of symptoms related to sleep apnea during his active military service or within two years after his active military service. The VA examiner noted that there was evidence that the Veteran was diagnosed in 2007, which was years after separating from service. Further the VA examiner stated that it was well known in the medical literature that the most contributory factors to development of obstructive sleep apnea was obesity predisposing to collapse of pharyngeal airways, elongated uvula, and loss of normal pharyngeal muscle tone. 

The Board assigns great weight and probative value to the March 2016 VA medical opinion. In his March 2016 VA medical opinion, the VA examiner fully and thoroughly addressed the Veteran's medical history, including lay history, and provided a detailed and sufficient rationale as to why the Veteran's disability was not related to his military service. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Significantly, there are no other medical opinions of record that support the Veteran's claim for service connection for hyperinsomnia with sleep apnea. 

As for the statements from the Veteran relating his sleep apnea to his military service, while he may be competent to testify as to the symptoms he experiences, it is beyond his competence as a layperson to opine regarding medical etiology. The Veteran lacks the medical expertise to competently comment on whether one disability is caused or aggravated by another or whether it is etiologically related to military service; this is complex medical question and may not be resolved by lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (whether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board rather than a legal issue to be addressed by the Veteran's Court). 

In conclusion, based on the weight of the evidence, the Board finds that service connection for sleep apnea cannot be granted.

iii. Swelling of the Left Face

The Veteran is seeking service connection for swelling of the left side of his face, contending that the swelling is related to his military service. For reasons described below, the Board finds that entitlement to service connection cannot be granted.

The Veteran's service treatment records do not reflect any complaints, signs, symptoms, or treatment for swelling of the left side of the face. Postservice treatment records show that the Veteran did have some problems with swelling of his face. Records furnished by the Social Security Administration show that in January 1998 the Veteran complained of swelling of the face, and it was noted that the Veteran was allergic to Tylenol. 

In an August 2004 VA treatment record, it was noted that the Veteran had an aspirin allergy, in which he developed facial swelling. In a January 2005 VA treatment record, it was noted that the Veteran had a history of an "abscess" of the lower jaw. The Veteran had swelling and pain of the jaw localized to the right side of the face. The Veteran was given antibiotics and pain medications. The infection resolved in 8 days, but he had fullness and pain over the right anterior side of his chin. Further, in January 2005, it was noted that the Veteran complained of pain and swelling on the left side of his face, beginning two days prior. 

Although the Veteran served in the Southwest Asia theatre of operations during the Persian Gulf War, the medical evidence of record does not show that the Veteran's condition is attributed to any unknown clinical diagnosis. Rather, the Veteran's facial swelling, according to the Veteran's medical records, appears to be due to his allergic reaction to medications or an infection. 

Given that the claimed symptoms have been affirmatively attributed to the allergic reactions to medication - and not an in-service event or injury, service connection for swelling of the left face cannot be granted. 


ORDER

As new and material evidence has not been received, the appeal to reopen the matter of entitlement to service connection for allergic rhinitis is denied.

As new and material evidence has not been received, the appeal to reopen the matter of entitlement to service connection for sinusitis is denied.

As new and material evidence has not been received, the appeal to reopen the matter of entitlement to service connection for loss of vision is denied. 

The appeal to reopen a claim for service connection for swelling of the left face is granted. 

Service connection for polyarthritis of the bilateral lower extremities, to include as due to an undiagnosed illness, is denied. 

Service connection for hyperinsomnia with sleep apnea, to include as due to an undiagnosed illness, is denied. 

Service connection for swelling of the left side of the face, to include as due to an undiagnosed illness, is denied. 



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs